# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 20-813V
(to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
SANDRA ADKINS,                      *
                                    *     Chief Special Master Corcoran
                 Petitioner,        *
   v.                               *     Filed: March 24, 2022
                                    *
SECRETARY OF HEALTH                 *
AND HUMAN SERVICES,                 *
                                    *
                 Respondent.        *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Wei Kit Tai*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION DISMISSING PETITION[1]

On July 2, 2020, Sandra Adkins filed a petition for compensation under the National Vaccine and Injury Compensation Program (the "Vaccine Program").[2] (ECF No. 1) ("Pet."). Petitioner alleged that she suffered a shoulder injury ("SIRVA") related to her receipt of an influenza ("flu") vaccine on January 3, 2019, from Valley Health Systems, Inc., in Huntington, West Virginia. Pet. at 1.

The matter was initially assigned to the Special Processing Unit for the Office of Special Masters ("SPU"), based upon the assumption that the case might be amenable to settlement.

---

[1] This Decision shall be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to Section 300aa of the Act (but will omit the statutory prefix).

However, it was transferred out of SPU to another special master in March 2021. Order, dated March 18, 2021 (ECF No. 25) ("Transfer Order"). At that time (and in my capacity as Chief Special Master responsible for all SPU-designated cases), I provided my preliminary view that there were a number of factors suggesting the case might not succeed—including the fact that the six-month severity requirement could not be met (at least based on the record at that time). Transfer Order at 1; *see also* Section 11(c)(1)(D)(i).

A few months later, Respondent filed a Rule 4(c) Report detailing its entitlement opposition and grounds for so maintaining. Report, dated July 30, 2021 (ECF No. 34) ("Report"). Specifically, Respondent argued (among other things) that Petitioner could not meet the statutory severity requirement, since there was a gap of approximately 17 months between the date Petitioner sought initial treatment for post-vaccination shoulder pain (January 11, 2019) and her next treatment visit (June 20, 2020). *Id.* at 7. During this interval Petitioner repeatedly sought medical care, but did not complain of shoulder problems (and attributed visits to some treaters in this period to distinguishable neck pain incurred after a mammogram sometime in June 2019). *Id.* at 3–4.

The case was subsequently reassigned back to me (outside of SPU), and I set a briefing schedule for Petitioner to show cause why the claim should not be dismissed given the severity issues, setting deadline for both sides to offer their position on the matter. Order to Show Cause, dated Sept. 28, 2021 (Docket Entry Order). Both parties filed their briefs in accordance. Petitioner's brief, dated Dec. 17, 2021 (ECF No. 39) ("Mot."); Respondent's brief, dated Jan. 31, 2022 (ECF No. 40) ("Opp."). Petitioner did not opt to file a reply, and the matter is now fully briefed.

## Medical History

Petitioner received the flu vaccine on January 3, 2019, when she was 56 years old, the shoulder it was administered in was not listed. Ex. 1 at 145. Prior to vaccination, Petitioner had sought treatment for left should pain. Ex. 7 at 20–22; Ex. 9 at 54, 56. This included a diagnosis of subacromial bursitis (Ex. 7 at 20–22), supraspinatus tendinosis (Ex. 7 at 13), and four steroid injections in her left shoulder. Ex. 1 at 23–25, 55–57; Ex. 7 at 18–19, 20–22. Ms. Adkins also had previous history of chronic obstructive pulmonary disease, fibromyalgia, iron deficiency anemia, lumbar radiculopathy, osteopenia, rheumatoid arthritis, vertigo, and vocal cord polyp. Ex. 1 at 5. At other times she suffered from myofascial pain syndrome and spinal stenosis cervical form C. *Id.* at 59.

Approximately a week later, Petitioner maintains, she went to her primary care physician ("PCP") on January 11, 2019, complaining of left shoulder pain, and in response was placed on steroids (although there are not records from this visit). Ex. 2 at 3; Ex. 3 at 127. That same day,

she presented to the Cabell Huntington Hospital emergency department ("ED") complaining of left shoulder pain after her vaccine. Ex. 3 at 127. She specifically reported that her "shot was very painful and caused bleeding from her arm for [a] prolonged period of time." *Id.* Petitioner's range of motion was normal, and she had no sensory changes or weaknesses. *Id.* The diagnosis was a shoulder contusion, she was prescribed oral steroids, and advised to follow up with her PCP the next week. *Id.* at 128–29.

The medical record thereafter—for the next 17 months—reveals numerous doctor's visits, but no efforts to treat a shoulder injury arguably associated with the January 2019 vaccination, and no reports of shoulder pain itself. Thus:

- On April 18, 2019, Petitioner went to an internist, Dr. Daniel Whitmore, with complaints of sinus issues. Ex. 1 at 148. She was diagnosed with a common cold and did not complain of any left shoulder pain during the visit. *Id.* at 150.

- Petitioner went to her PCP on July 1, 2019, with complaints of neck pain, which she associated with a recent mammogram procedure. Ex. 4 at 19. She reported a neurology appointment in August as well, which revealed limited range of motion in her cervical spine, resulting in a finding of a degenerative condition in her cervical spine, cervical spine pain, and facet arthritis. *Id.*

- On July 22, 2019, Petitioner again presented to her PCP with a burn on her right arm from cooking. Ex. 4 at 17.

- She appeared again at her PCP on July 26, 2019, with a swollen right hand. Ex. 4 at 15. The assessment was cellulitis likely caused by an infection and given pain medication. *Id.*

- An MRI was taken of Petitioner's cervical spine on August 10, 2019. Ex. 4 at 14. The report noted a history of "twisting injury of [the] neck [two] months ago" and "pain in both arms." *Id.* Interpretation was "C6-C7 uncovertebral spur contributes to moderate left and mild right foraminal narrowing." *Id.*

- Petitioner appeared to her PCP on August 14, 2019, due to a dog bite. Ex. 4 at 11–12. She returned to her PCP later that month, complaining of arthritis pain. Ex. 1 at 152. Exam showed musculoskeletal symptoms of diffuse joint and muscle pain. *Id.* at 153. Her diagnosis was RA and myofascial pain syndrome. *Id.* at 154.

- On September 5, 2019, Petitioner had a neurologist appointment with Dr. Anthony Alberico. Ex. 9 at 13. She reported that during a mammogram in June of 2019, the

3

machine "hit her in the right side of her face and forced her head and neck to the left side of her body," leading to radiating neck pain down her shoulders and upper extremities. *Id.* Further complaint was "neck radiating to bilateral shoulder and down bilateral upper extremities." *Id.* Petitioner was to return in six months for reevaluation along with Robaxin being prescribed to alleviate symptoms. *Id.* at 16. No mention was made of her prior vaccination. *See id.* at 13–16.

- On December 24, 2019, Petitioner called St. Mary's Women and Family Care complaining of arthritis pain in her right shoulder. Ex. 12 at 15. That same day she went to her PCP with *right* shoulder pain since the day prior. Ex. 4 at 2. In her complaint Petitioner noted that the "pain started as biceps pain, but moved to joint," and she had taken Prednisone at night. *Id.* Her exam showed decreased range of motion in her right shoulder and was diagnosed with osteoarthritis in her right shoulder, with a history of RA. *Id.* Petitioner was given Medrol and prescribed Prednisone. *Id.*

- Petitioner returned to her PCP on February 6, 2020, complaining of redness on her left arm and chest. Ex. 5 at 10. Along with this she reported chronic pain, stress and tremors, along with her history of RA. *Id.* The diagnosis was RA and benign essential tremor. *See id.* She saw her PCP again that same month, complaining of right elbow pain that began a week earlier while raking. *Id.* at 13.

- On March 13, 2020, Petitioner went to her PCP with complaints of an arthritis flare in her hands, hip, and feet. Ex. 5 at 19. She was assessed with osteoarthritis and prescribed medication for treatment. *Id.*

It was only on June 10, 2020, that Petitioner again specifically noted post-vaccination left arm pain. Ex. 6 at 4. She reported this pain began when she received her flu vaccine and it had worsened in the past week. *Id.* Her arm strength was a four out of five "with shaking motion on active motion." *Id.* Her PCP noted he was "unsure if related to prev[ious] flu vaccine," and she was referred to neurology. *Id.*

The records filed in this case for the timeframe thereafter reveal several further complains of neck pain as well as intermittent complaints about a purported left shoulder injury. *See,* e.g., Ex. 13 at 28–30 (December 2020 visit), 25–27 (January 2021 treatment record). Petitioner avers in witness statements that she continues to experience pain and discomfort that has affected her quality of life. Ex. 14; Ex. 15.

## ANALYSIS

Petitioners not asserting a vaccine-related death or other injury requiring a surgical intervention and inpatient care must demonstrate that they suffered the residual effects or complications from their vaccine-related injury for more than six months. Section 11(c)(1)(D); *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011). Petitioners bear the burden of establishing this preponderantly. *Song v. Sec'y of Health & Hum. Servs.*, 31 Fed. Cl. 61, 65–66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 1994). They cannot establish the length or ongoing nature of an injury solely through personal statements, but rather must "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . ." *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995), *aff'd*, 93 F.3d (Fed. Cir. 1996).

While even mild symptoms that do not require intensive medical care may satisfy the severity requirement, ongoing medical treatment for conditions unrelated to an alleged vaccine injury do not. *Compare Wyatt v. Sec'y of Health & Hum. Servs.*, No. 14-706V, 2018 WL 7017751, at *22–23 (Fed. Cl. Spec. Mstr. Dec. 17, 2018) (petitioner's post-vaccination GBS resolved within three months; subsequent ongoing medical treatment for upper respiratory and gastrointestinal infections did not satisfy six-month requirement), *with Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (ongoing mild GBS symptoms that did not require active medical care nevertheless satisfied severity requirement).

Because Petitioner received her vaccine on January 3, 2019, and alleges immediate pain (or at least pain within the 48-hour Table timeframe for a SIRVA injury), severity must be established at least through July 2–4, 2019 (six months after onset).[3] Mot. at 10; Ex. 3 at 127. But as noted above, the record does not in the least establish that the pain that is documented in early January likely persisted into July 2019. On the contrary—the record is almost silent on the question for nearly a year and a half, with Petitioner seeking treatment for other, unrelated issues which she does not attribute to the vaccine (for example, an injury pertaining to a mammogram procedure), and which otherwise could not be construed as associated. Petitioner argues that these later visits prove that she had left shoulder pain the entire time. Mot. at 11. Specifically, she points to her affidavits and the later medical records to show pain over two years. *Id.* While this is notable, it does not make up for the many visits made during the time without any complaints of left shoulder pain.

Petitioner has offered some record evidence from the time period after June 2020 in which she reported some left shoulder issues, and personally maintains she continued to experience pain.

---

[3] This is not a case that turns on a precise calculation of onset—for even if onset were deemed closer to the date of Petitioner's ED visit on January 11, 2019 (in which case the claim would no longer arise under the Table SIRVA definition), the timeframe for severity would not appreciably expand enough, given the evidence, to save the claim.

But such witness representations are not corroborated by the record, and it is well established in the Program that Petitioners cannot satisfy their burden relying *solely* on personal attestation. The gap in the record is simply too long, and too silent, for me to conclude that six months of severity is met in this case. It cannot be concluded on the basis of this record that post-vaccination pain that manifested in January 2019 "more likely than not" persisted through July of that same year.

**CONCLUSION**

Based on the record as a whole, Petitioner has failed to prove by preponderant evidence that her should injury or its residual effects lasted for more than six months. Accordingly, Petitioner has not established entitlement to an award of damages (under a Table or causation-in-fact version of the claim), and I must DISMISS the claim.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[4]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.